UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 21-cr-128 (RC) |
| | : | |
| **MICHAEL POPE,** | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION TO STAY OR CONTINUE TRIAL

The United States of America respectfully opposes the defendant Michael Pope's Motion to Stay or Continue Trial (ECF No. 164). On December 13, 2023, the United States Supreme Court granted certiorari in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), *cert. granted* 23-5572. In *Fischer*, the matter at issue is the appropriate interpretation 18 U.S.C. § 1512(c)(2), a statute criminalizing obstruction of an official proceeding; the defendant, Michael Pope, stands charged of this and three other crimes stemming from his conduct on January 6, 2021. This Supreme Court's grant of certiorari in *Fischer*, which does not affect the other one felony and two misdemeanor charges Michael Pope faces[1], does not merit a continuance of the trial scheduled for January 16, 2024; such a continuance would be against the interest of judicial economy and justice.

Further, the defendant has asked for a stay of "at most 6 months […] pending the Supreme Court's resolution of *Fischer*." (ECF No. 164 at 4).[2] A six-month stay would mean that Michael

---

[1] The Second Superseding Indictment includes six charges. (ECF No. 156). Michael Pope pled guilty to two of the six charges on December 13, 2023. (12/13/2023 Minute Order).

[2] Although defendant asks for a stay of six months "at most," he also asks for the stay to remain in place pending the Supreme Court's decision on *Fischer*. (ECF No. 164 at 4). Since the Supreme Court will likely not decide the case until the end of the term in June of 2024, defendant is effectively asking for a six month stay **at minimum**.

Pope's trial would occur one week before his former co-defendant, William Pope's, trial. For reasons of judicial economy, the government request rejoinder if a stay is issued.

For the above reasons, the Court should deny a stay or continuance of the trial scheduled for January 16, 2024, or, in the alternative, rejoin the Popes' cases for trial.

## I. Background and Procedural History

### a. The Second Superseding Indictment

The defendant currently faces four charges of the six-charge Second Superseding Indictment, (ECF No. 156). The defendant pled guilty to Count 3 (Entering and Remaining in a Restricted Building or Grounds), 18 U.S.C. § 1752(a)(1), and Count 6 (Parading, Demonstrating, or Picketing in a Capitol Building), 40 U.S.C. 5104(e)(2)(G), at the December 13, 2023 Plea Hearing. Defendant is facing the following charges at trial, which is scheduled to begin in just two weeks on January 16, 2024: Count 1 (Civil Disorder), 18 U.S.C § 231(a)(3); Count 2 (Obstruction of an Official Proceeding and Aiding and Abetting), 18 U.S.C. § 1512(c)(2) and (2); Count 4 (Disorderly or Disruptive Conduct in in a Restricted Building or Grounds), 18 U.S.C. § 1752(a)(2); and Count 5 (Disorderly Conduct in a Capitol Building), 40 U.S.C. § 5104(e)(2)(D).

### b. Michael Pope's Conduct on January 6, 2021

Michael Pope and his brother William Pope used Facebook Messenger to plan their trip to D.C. for the events of January 6, 2021. They discussed their itinerary, their transportation options, the gear and weapons they might bring, and their escape plan if something were to go wrong. They discussed attending President Trump's rally in Atlanta but decided to skip it in favor of meeting closer to D.C. and traveling down the East Coast to Charleston, South Carolina, after the January 6 rally.

The Popes went to Washington, D.C. to stop Congress's certification of the Electoral College vote. The Popes arrived at the Mall around 7:00 a.m. on January 6. Each carried a flagpole with an American flag. Michael was wearing a black jacket, a black stocking hat, and a larger green or tan backpack. The Popes decided not to go into President's Park, where law enforcement officers were conducting security screening, because the flagpoles they were carrying would not be allowed. Instead, they listened to former President Trump's speech from near the Washington Monument. In his speech, President Trump discussed the certification of the electoral college vote occurring in Congress that day, ensuring that the audience, including the Popes, were aware of the upcoming proceedings. *See* Video and Transcript of President Trump's Remarks on Jan. 6, 2021, available at https://shorturl.at/gnpu6 (last accessed December 29, 2023).

The Popes walked more than a mile from the Washington Monument to the U.S. Capitol. During part of this walk, William streamed a Facebook Live video, showing his face and Michael walking alongside him. In the video, William said he is "here today with his brother Michael." At the time he made the statement, William turned the camera toward Michael, who was walking right next to William and who acknowledged William with a wave. William also said that he was marching to the Capitol, where Vice President Mike Pence was located. William said that the crowd was marching toward the Capitol and said, "Mike Pence, I guess he is down there right now, deciding whether they are certifying the election or not." William further added that "[w]e got a lot of people who are not happy that the election is potentially being stolen. And, ah, they are here to stand up for our country." These statements were made within earshot of Michael.

At about 1:53 p.m., Michael is seen on open-source video at the vanguard of the crowd at the East Front of the Capitol. At that location, while a police officer attempted to keep rioters,

3

including Michael, back, Michael removed linked bike racks serving as a barrier, stepped over or around them, and surged forward with the rest of the crowd toward the Capitol Building.

The Popes entered the Capitol through the Senate Carriage Doors, at approximately 2:18 p.m. Just prior to their entry, police were ushering rioters out of the Senate Carriage Doors. Although the doors remained open, police had the entry largely under control. A crowd began to grow just outside the doors, putting additional pressure on the officers. William was near the front of this crowd. He used his body to push his way into the building, maneuvering past a police officer who was attempting to block the entryway. Michael also entered the Capitol, immediately behind William. After the Popes entered, police managed to close one of the two doors. A scuffle broke out between police and rioters, just as William repositioned himself to be in the doorway. An officer reached past William to deploy pepper spray at the crowd. William wedged the flagpole he was carrying into the door jamb to keep it from closing at approximately 2:18 p.m. Officers were able to close the other door, but not the one William was holding open. Officers were able to remove the flagpole approximately thirty seconds later, at 2:19 p.m. Multiple officers were required to physically remove William from blocking the door. After pulling William away, officers closed and locked the Senate Carriage Doors. William then continued into the Capitol building behind his brother.

While William was holding the door open, Michael was inside the Capitol. Once inside the Capitol, Michael entered a Senate elevator at approximately 2:19 p.m. Officers directed Michael to leave the elevator, but he refused. Due to his refusal to leave, three officers had to pull him from the elevator.

After Michael refused to leave the elevator, the Popes penetrated further into the building and came across a hallway guarded by a police officer. Here, at about 2:23 p.m., Michael attempted

to enter the hallway and was stopped by the police officer. The police officer moved Michael back out of the hallway, and Michael grappled with the officer. Michael stayed in the officer's personal space and made a second attempt to get past the officer, again forcing the officer to block Michael.

Michael Pope left the Capitol approximately 20 minutes after breaking in, at about 2:37 p.m. At 2:42 p.m., the Popes' mother sent Michael Pope a Facebook message stating that, "[…] the senate/house are on lockdown because trump supporters have stormed inside the capitol building. What are you seeing?" Michael responded, "[t]hat sounds feasible."

Also on January 6, Michael sent his mother the following Facebook message: "It was more peaceful than what the news is making it out to be. I saw a few people hurt including PD, and offered to help. Wasn't anywhere near the shooting, and probably found out after you did." When his mother suggested that "it was antifa who breached the capitol," Michael responded, "I'm sure antifa was there among the crowd, but it felt more like the people decided that fraudulent elections equated to a lack of representation and took back their capital in the 21st centuries equivalent to the boston tea party."

On January 7, William texted Michael, "I think I'm going to wait this all out." Michael responded, "That might be smart. It looks like they charged the first person already. He got assault and unlawful entry after beating a cop inside the capitol. We were peaceful, and I can with with unlawful entry if thats what happens." [sic]

### c. Severance of Michael Pope and William Pope's Cases

This case has been pending since February 12, 2021, when the Pope brothers were arrested and charged as co-defendants. (ECF No. 7 & 8). On June 12, 2023, Michael Pope moved for a severance of his case from William's case under Rule 14, arguing that keeping the cases joined would prejudice his right to a speedy trial. (ECF No. 122). Michael Pope stated that he "should be

tried on a very different timeline than his pro se co-defendant William Pope" because of his brother's discovery access issues. *Id* at 2. Michael Pope stated he wanted to avoid a delay of "many more months or even years." *Id.* Michael also argued the trial should be severed because: (1) the interests of judicial economy favored having two separate trials for the brothers rather than a single trial; (2) evidence introduced at the trial relating to William Pope's actions at the Capitol would prejudice Michael Pope (although the brothers came to the Capitol and traveled throughout the Capitol together on January 6, 2021); and (3) William Pope's *pro se* representation would prejudice Michael's defense. *Id* at 2-3.

When discussing his motion to sever at a hearing on September 15, 2023, counsel for Michael represented that Michael's trial would be "several months -- at a minimum, several months prior to any – the trial of William Pope." September 15, 2023 Hearing Transcript, at 6.

The government opposed the motion for severance of the trials. (ECF No. 125). The government argued that joinder was appropriate because the Pope brothers participated in the same "series of acts," the evidence against them was largely the same, and that denial of Michael Pope's severance motion would not result in a violation of his right to a speedy trial. *See, id* at 7.

The court granted Michael Pope's motion for severance, in part based on the fact that a joint trial would extend the length of time before Michael Pope would be able to proceed to trial. (ECF. 148, p. 2).

## II. Legal Standard

When evaluating whether to issue a stay, "a court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest

6

lies.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The third and fourth factors "merge" when a party moves for a stay against the government. *Id.* at 435. A stay "'is not a matter of right, even if irreparable injury might otherwise result.'" *Id.* at 433 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). The party seeking the stay bears the burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).

### III.   Argument

#### a.   The Circumstances and Law Weigh Against Michael Pope's Motion for a Stay

Michael Pope's request for a stay of six months should be denied because the relevant factors weigh against his request and a stay would run against the logic that led this court to sever his case from William Pope. Already, other courts in this district have declined to stay or continue proceedings connected to the January 6, 2021, riot at the United States Capitol based on the Supreme Court's decision to hear *Fischer*. *See USA v. Bennett* et al, 1:21-cr-00312 (JEB) (Minute Order 12/28/2023) (declining a stay based on Fischer due to the time the case had been pending, the numerous other counts beyond Section 1512 the defendant faced, and the fact that the defendant would not be sentenced (if at all) until after the Supreme Court decides *U.S. v. Fischer*); *United States v. Sara Carpenter*, 21-cr-305 (JEB) (Minute Order, 12/15/2023) (declining to delay sentencing based on *Fischer*); *USA v. Dunfee*, 1:23-cr-00036 (MAU) (ECF No. 59, denying oral motion to stay based on *Fischer,* on the understanding not staying was consistent with other criminal matters proceeding to trial during appellate review and the public interest in a speedy trial). As in these cases, Michael Pope's request for a lengthy continuance should be denied.

First, the fact that the Supreme Court granted certiorari in *Fischer* does not establish that the defendant is likely to succeed on the merits of any challenge to his Section 1512(c)(2) conviction. At this time, a panel of the D.C. Circuit and every district court judge but one has agreed with the government's interpretation of that statute. *See Fischer*, 64 F.4th at 338 ("Although the opinions of those district judges are not binding on us, the near unanimity of the rulings is striking, as well as the thorough and persuasive reasoning in the decisions. . . . The district judge in the instant case stands alone in ruling that § 1512(c)(2) cannot reach the conduct of January 6 defendants."). The mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that those opinions were wrongly decided. *See, e.g.*, *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) ("[T]he grant of certiorari does not necessarily indicate that the position advocated by Heath has any merit, only that it is an important question.").

Moreover, one Circuit judge has explained how, even were the Supreme Court to reverse the Court of Appeals in *Fischer,* defendants who obstructed the certification would still be convicted. *See Brock v. United States*, No. 23-3045 (D.C. Cir. May 25, 2023) (per curiam) (Millet, J., concurring). In his concurrence to the denial of the release of a January 6 defendant pending appeal, Judge Millett wrote:

> The charge of obstructing Congress's electoral vote count and [the defendant]'s proven conduct seem, on my initial view, to satisfy both the court's and the dissenting opinion's reading of the statute. That is because the congressional proceeding that [the defendant] was convicted of obstructing was the counting of electoral college votes that is statutorily required for Congress to certify the election of the President of the United States… The defendant]'s participation in the riot on January 6th, 2021, "caused Congress to adjourn" that statutorily mandated process of receiving, verifying, and counting the certificates of electoral votes. Indeed, [the defendant] appeared "on the floor of the Senate where the proceedings [w]ould have been occurring" if [the defendant] and the others who invaded the Capitol had not forced lawmakers and staff to halt the electoral vote count and flee for safety. In so doing, [the defendant]'s conduct necessarily obstructed the handling, submission, processing, and congressional consideration of the evidence of each State's electoral votes. It did so just as much as if [the defendant] had grabbed a pile of state certificates and run away with them. (Internal citations omitted)

Were every criminal case stayed while a potentially applicable issue was litigated on appeal in a separate case, the criminal justice system would grind to a halt. *Fischer* and other cases challenging the application of 18 U.S.C. § 1512(c)(2) have been pending for some time, and such developments did not previously merit a broad stay. Nothing has changed by virtue of the Supreme Court's decision to grant *certiorari* in *Fischer*.

A six-month delay in the proceedings, as Michael Pope requests, is "substantial." *See United States v. Raymond*, No. 21-cr-380-CKK, 2023 WL 6317850, at *1 (Sept. 28, 2023) ("Before turning to the reasons for Defendant's proposed continuance, the Court stresses that a five-month continuance is substantial. This case has been pending in this jurisdiction...nearly three years."). This case has been pending since February 2021, almost three years. During that time, the court has continued the matter multiple times to accommodate Michael Pope. *See* 6/22/2021 Minute Entry; 1/11/2022 Minute Entry; Def. Motion to Continue Reply Due Date (ECF No. 126). Most recently, Michael asked the Court to move his trial from December 13, 2023, to January 16, 2024, which the Court accommodated. *See* 11/30/2023 Minute Entry.

It is unlikely that any decision in *Fischer* would be issued by the Supreme Court before the end of its term in June of 2024. Delaying the trial for another six months would undermine the interests of the public in the timely adjudication of the charges Michael Pope faces. Courts have, in the past, moved forward with pleas, trials, and sentencings for charges brought under statutes under review in cases before the Supreme Court. (*See, Rehaif v. United States*, 588 U.S. __ (2019)).

The defendant currently faces three charges besides Count 2 (Obstruction of an Official Proceeding and Aiding and Abetting), 18 U.S.C. § 1512(c)(2) and (2). They are Count 1 (Civil Disorder), 18 U.S.C § 231(a)(3), Count 4 (Disorderly or Disruptive Conduct in in a Restricted

9


Building or Grounds), 18 U.S.C. § 1752(a)(2), and Count 5 (Disorderly Conduct in a Capitol Building), 40 U.S.C. § 5104(e)(2)(D).[3]

Regardless of the implications of *Fischer,* the public has a right to resolution on Michael Pope's other charges. Unlike the cases cited by the defendant (*See*, ECF No. 164, at pg. 2, citing *Thomas v. Nakatani*, 128 F.Supp.2d 684 (S.D. Iowa 2009); *Harrington v. Wilber*, 670 F.Supp.2d 951 (S.D. Iowa 2009), the case at hand is a criminal case and not a civil one. And because the evidence on the other criminal charges that Michael Pope is facing overlap considerably with the evidence the government would use to prove the 1512 count, there is a compelling rationale for the parties to proceed to trial on all counts as currently scheduled. The other felony charge, civil disorder, and the misdemeanors charges are closely related to 18 U.S.C. § 1512(c)(2). Accordingly, preparation for an 18 U.S.C. § 1512(c)(2) defense will have considerable overlap with his defense for the other charges. And, given that trial is scheduled for January 16, 2024, and sentencing would likely not occur until at least April 2024, it is unlikely that, if convicted, Michael Pope would have finished serving his sentence on the non-1512 charges before *Fischer* is decided. Moreover, if convicted and sentenced to a term of incarceration, Michael Pope would retain his ability to move to stay his reporting date until Fischer is decided. All of this further demonstrates that the defendant cannot establish irreparable injury.

Michael Pope will not suffer any irreparable injury by proceeding with trial as scheduled. Even if Michael Pope were convicted of obstruction of an official proceeding and if the Supreme Court were to decide *Fischer* adversely to the government, it is not clear that the Court's interpretation of Section 1512(c)(2) would necessarily invalidate Michael Pope's conviction.

---

[3] As stated above, Defendant has already pled guilty to two counts of the six-count Second Superseding Indictment.

Moreover, even if it did, the appropriate venue for challenging such a conviction would be a motion to set aside the verdict or a post-sentencing appeal, depending on the timing. In this respect, defendant "stands in no different position than any other criminal defendant who loses a pretrial motion attacking an indictment on the ground that the underlying criminal statute is unconstitutional. The district court's order in such a case . . . would be fully reviewable on appeal should the defendant be convicted." *United States v. Cisneros*, 169 F.3d 763, 768-69 (D.C. Cir. 1999).

As Judge Howell recently recognized, a defendant is not "irreparably harmed without a stay" simply "because 'he will be forced to go to trial' before his appeal on violations of his constitutional rights is heard." *United States v. González-Valencia*, No. 16-65-1 (BAH), 2022 WL 3978185, at *6 (D.D.C. Sept. 1, 2022). That is why interlocutory appeals are allowed only in rare cases. In contrast, a stay would prejudice the government. "The government also faces irreparable harm because, as more time passes, the government's . . . evidence continues to age, which hurts witnesses' ability to recollect those events clearly at trial." *Id.* at *7. We are now just two weeks out from the beginning of the trial and the government has already spent considerable time in preparation for trial. This includes preparing witnesses.

      b. **If the Court Grants Michael Pope's Severance Motion, the Government Requests Michael and William Pope's Trials Be Rejoined**

Finally, should the Court grant Michael Pope's motion for a stay of his trial, the government requests that his trial be rejoined with his brother William's trial. The defendant's motion for severance argued that speedy trial concerns were a central reason for his severance request. (ECF No. 122.) However, Michael Pope now seeks a delay "pending the Supreme Court's resolution of *Fischer*." The resolution would likely not occur until the end of the Supreme Court's term in June of 2024. *See* https://www.uscourts.gov/about-federal-courts/educational-

11

resources/about-educational-outreach/activity-resources/supreme-1# ("All opinions of the Court are, typically, handed down by the last day of the Court's term (the day in late June/early July when the Court recesses for the summer).") (last accessed December 28. 2023). A stay until the resolution of *Fischer* would mean Michael's trial would likely occur within a week of William's trial in July.  Accordingly, if Michael and William's trials remain severed, Michael's stay would lead to this Court holding two back-to-back trials with the same witnesses and underlying facts, wasting this Court's limited time and resources.

Defendant's request for this long stay therefore justifies re-joining the cases. Doing so would conserve judicial resources and prevent the Court from having to hold two back-to-back, nearly identical trials.

## CONCLUSION

Ultimately, Michael Pope's desire to have the Supreme Court resolve *Fisher* before his trial does not outweigh the public's interest in a speedy trial, particularly as a stay in sentencing would be a more appropriate to address this issue should Michael Pope be convicted at trial. It would be more efficient for the Court and for the government to proceed with the current trial date set just two weeks away. For all these reasons, Michael Pope's motion to stay the proceedings should be denied, and the Court should proceed with trial on January 16, 2024.  Should the Court issue a stay, the Popes' cases should be rejoined for trial.

                                                      Respectfully submitted,

                                                      MATTHEW M. GRAVES
                                                      United States Attorney
                                                      D.C. Bar No. 481052

                        By:    */s/ Matthew Beckwith*
                                Matthew Beckwith

                                          Assistant United States Attorney
                                          New York Bar No. 90014452
                                          United States Attorney's Office
                                          For the District of Columbia
                                          601 D Street, NW 20530
                                          Matthew.Beckwith@usdoj.gov