IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL POPE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)   Criminal No.: 21-cr-128 (RC)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## FIFTH NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANT MICHAEL POPE'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER RULE 29

Having very recently received transcripts of additional acquittal verdicts in two more bench trials, Defendant Michael Pope, by and through the undersigned court-appointed counsel, hereby respectfully files this Fifth Notice of Supplemental Authority in Support of his Motion for Judgment of Acquittal Under Fed. R. Crim. P. 29 on Count One charging obstruction of a law enforcement officer in a civil disorder under 18 U.S.C. § 231(a)(3), and on Count Two charging obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2), at the U.S. Capitol on January 6, 2021.[1]

---

[1] Michael Pope's original Supplemental Memorandum In Support of his Motion for Judgment of Acquittal Under Rule 29 was filed on March 8, 2024. (ECF No. 221.)  He also filed a first Notice of Supplemental Authority In Support of his Motion for Judgment of Acquittal on March 25, 2024. (ECF No. 229.)  Then, on April

Michael Pope previously indicated that he was still waiting for more transcripts of acquittal verdicts by other judges of this Court who had conducted bench trials of January 6th defendants for violations of 18 U.S.C. §§ 231(a)(3) and 1512(c)(2), and would further inform the Court accordingly.

### JUDGE JIA M. COBB'S VERDICT IN *UNITED STATES v. HICKS*

In Judge Jia M. Cobb's verdict in *United States v. Hicks*, Case No. 1:23-cr-00399, the reading transcript of which undersigned counsel received at the end of last week, the defendant was acquitted on Section 231(a)(3) charges because the government had not proved beyond a reasonable doubt "that [Hicks] knowingly committed an act with the intended purpose of obstructing, impeding or interfering with one or more law enforcement officers." *Id.,* Transcript of June 27, 2024, at 13. Such a verdict was reached after Judge Cobb's finding of multiple incidents of physical interaction, between the defendant and another individual while trying to gain entry into the Capitol, and another between the defendant and a law enforcement officer. Simply put, Mr. Hicks being physically present in the Capitol making it more difficult for the officers to do their job because he was part of the

---

26, 2024, Michael Pope filed his Reply Memorandum of Law (ECF No. 248), which responded to the Government's Memorandum In Opposition to the Rule 29 Motion, filed on April 5, 2024 (ECF No. 235.). Michael Pope filed his Second Notice of Supplemental Authority In Support of his Motion for Judgment of Acquittal on May 7, 2024. (ECF No. 258.) Michael Pope filed his Third Notice of Supplemental Authority In Support of his Motion for Judgment of Acquittal on June 27, 2024. (ECF No. 331.) Finally, Michael Pope filed his Fourth Notice of Supplemental Authority In Support of his Motion for Judgment of Acquittal on June 28, 2024. (ECF No. 332.)

mob was insufficient to find that it was his intent to obstruct, impede or interfere with law enforcement based on the video evidence presented at trial. *United States v. Hicks*, Case No. 1:23-cr-00399, Transcript of the June 27, 2024 Verdict Proceeding, at 15, attached hereto as Exhibit 1.

### **JUDGE BERMAN JACKSON'S VERDICT IN *UNITED STATES v. BLACK***

In another verdict the transcript of which undersigned counsel has now received, *United States*, Judge Amy Berman Jackson acquitted Mr. Black, who had been inside the Senate Chamber, of a violation of Section 1512(a)(2). The *Black* verdict is lengthy and is quoted extensively, but Michael Pope specifically directs this Court's attention to the **bolded** text.

> So, I have reached a verdict in this case. The standard is that the government must prove every element of every offense beyond a reasonable doubt. I have reviewed the jury instructions to make sure that my fact finding process was governed by the appropriate rules. And this ruling is specifically made in accordance with all of the jury instructions set forth in the parties' agreed proposed instructions. In particular and in including Burden of Proof and Presumption of Innocence 2.107, Reasonable Doubt at 2.108, and Proof of State of Mind at 3.101.
>
> Count 1 charges obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S. Code § 1512(c)(2) and 18 U.S. Code 2. The first element of that offense is that the defendant attempted to or did obstruct an official proceeding. Specifically, Congress's certification of the Electoral College vote as set out in the 12th Amendment of the Constitution. So this is whether he attempted to or did obstruct or impede it. And that has been established beyond a reasonable doubt.
>
> Defendant's forced entry into and unlawful ongoing presence in the building as a member of the mob, none of whom had passed through the ordinary security screens, not to mention his unauthorized presence on the floor of the Senate Chamber itself, made it impossible for the certification to proceed.

**The second element of this offense is that the defendant intended to obstruct or impede the official proceeding. This is the most difficult issue to resolve in this case. And the assessment must recognize that the government carries a very heavy burden at this point.**

What was the defendant trying to do? D.C. Standard Jury Instruction 3.101 says you may infer someone's intent from the surrounding circumstances. You may consider any statement made or acts done, or not done, by the defendant and all other facts and circumstances received in evidence which indicate his intent. You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts he intentionally did or intentionally did not do.

I do not agree with the defense that the defendant's sole, or even primary motivation was spiritual. **His motivation was obviously political.** And the defendant's own statements are of great relevance here. He starts his YouTube video, Exhibit 1.A.1, saying he wanted to get his side of the story out there. And he says, "Once we found out that Pence turned on us and that they had stolen the election, like officially, the crowd went crazy. I mean, it became a mob. We crossed the gate, we got up." And then he says, "When we got there the cops had formed a line and they were out numbered, probably 1,000 to 1. There was no way. The only way they were going to stop the crowd was lead bullets."

He does also say in Exhibit 1.AA, "I just wanted to get in the -- inside the building so I could plead the blood of Jesus over it. That was my goal." After he's shot, he says, at Exhibit 1.BB, "They tried to pull me behind the gate to give me medical, is what they said. And I was like, 'No, I'm with them. You know. I'm here to defend the Constitution. I'm a patriot. You know?'" Exhibit 1.DD he talks about once he gets around to the east side of the building and the Rotunda doors. "So I got down the back and I was sitting there thinking, 'Why is everybody just sitting on the steps?' I thought the goal was to show the politicians that the people run this country. That's the way it's supposed to be. You know? And so I was like, 'Why are we just sitting here?'" And then he says, when he got to the top and he got to the door, the people were just -- "it became a mob rule situation. You know what I'm saying? It was -- the patriots were pissed. I mean, it was so much anger. So I just kept saying, 'Praise the name of Jesus. Glory to God. God bless America.' You know? 'Praise the name of Jesus. I plead the blood of Jesus. Glory to God.'" This shows both his spiritual thinking and his political motivation.

He says, in Exhibit 1.E.1, that when he gets up to the Rotunda doors and he's confronted with Officer Carrion, he's either thinking or he says, "You know, I appreciate your service. But, you know, we've got to show these politicians

4

that we mean business. You know? We're not -- we're -- we're tired of getting lied to. We're tired of ya'll getting filthy rich off our backs. You know? Lying and cheating and stealing and -- we're tired of it, you know? That ain't exactly what I said. But it was -- that's the gist of it, you know?"

Exhibit 1.F.1, again confirms the political motivation. When the door gets opened up from the inside he says, "They opened it up from the in -- the guys on the inside. The mob, the pissed-off patriots, the guys that were here to defend the Constitution of the United States. Because it clearly says something about if they, you know -- my brother sent me a text -- oh, man, I should have looked that up before I done this. But it clearly states that in the Constitution, that if the government gets crooked, as they are now, and needs to be abolished or overthrown or something to that effect. You know? So that's what I was there for. I was obeying the Constitution. You know?"

Exhibit 1.H.1. We're still in the YouTube video. Says he got to the place were he saw the door that said "U.S. Senate on it. And said, 'I need to get in there.' I just felt like the spirit of God wanted me to go in the Senate room. You know? I was about to break the glass and I thought, 'No, this is our house. This is not -- we don't act like that.' You know? But I was tempted to, I ain't gonna lie. You know? Because I'm pretty upset. You know? They stole my country."

And at 1.I.1 he said, "There was no organization that I knew of. You know? It was just everybody found out that we lost our country, and they were pissed. You know? Because the Constitution specifically says if they get out of line, that we, the people, will abolished them. And that's -- that's what the Constitution says. So that's what we were doing. You know?"

The second part of the YouTube video, Exhibit 2.A.1, he says again, "There was no plan. It wasn't an organized event. This was just the we-the-people standing up to obey the Constitution, to abolished a corrupt government. That's what I mean. But once we got in there, what are we gonna do? Can't kill nobody. I mean, that ain't going to look right. It's all about PR, you know? I mean, it may come to that. I hope it don't. But it's a Democrat house. A crooked Democrat house. Crooked Republicans, too. And a crooked Democrat Senate. Crooked Republicans, too. And now there's a straight-up, crooked, lying, cheating, you know, president. And I ain't even going to say nothing about Kamala Harris. I mean, I'm a Christian and I ain't supposed to talk bad about folks. So I'm not going -- but you know what I'm saying. Like, you know how she got to the top."

He says, 2.B.1, "Just want to get my side of the story out there. I mean, this was kind of a long video and it was rambling. But I just -- God bless America.

5

Praise the name of Jesus. If God don't do it, it ain't gonna get done. I don't know what's coming next, but America has been stolen."

That's the end of his YouTube video. I think his political motivation is somewhat clear. In his interview with the FBI, this is the first one, on January 8th, in Exhibit 100.DD he says -- talks about when he gets around to the other side. And he says, "So, I got back there and the Lord told me -- I just felt like the lord wanted me to go in there and plead the blood of Jesus. Inside the building, you know? I just wanted to show the politicians that we, the people, run this country, you don't. You know, you swore an oath to defend the Constitution and you didn't do it, you know? You're a bunch of lying crooks, Democrats and Republicans, you know. I ain't a Republican, but you ain't got no other choice, you know? They're a bunch of -- I ain't supposed to talk bad about folks. But they ain't doing their job, they ain't working for us. You know, they're all about that, you know?"

So the agent says, "So basically you wanted to show the politicians up?" And he says, "Well, I wanted them to know that we, the people, can do it if we decide, you know? There wasn't no lead bullets flying from us. But, you know, we had the numbers and the power at the moment to show them that you don't run the country. We do. You know? That was -- and I wanted to plead the blood of Jesus on that place because there's all kinds of evil coming out of that thing. Their mission is not for the good of the people, you know? And I believe that considerably."

Exhibit 100.F.1, also in the January 8th interview, he's talking about the agents, the officers, "And they were, like, 'I'm just doing my job. I'm just doing my job.' You know? 'I swore an oath.' And I was like, 'Yeah to defend the Constitution and that ain't what you're doing right now. You're defending a bunch of crooked politicians,' which I'm glad they got them out of there because if the mob had got ahold of them, it would have been -- it would not have been good, 'cause America is pissed off at our elected officials.  You can't trust them no more. They're a bunch of dirt bags, you know? I'd say 90-plus percent of them are crooked as a dog's leg. They can't be trusted."

And finally, on the January 14th interview, Exhibit 101.H.1, he's asked again what was the general intention, what was the general idea. And Mr. Black said, "Well, we've been watching the protests on TV for two years where they're burning cities to the ground, killing people. So, I mean, I figured, well, shoot -- I guess, you know, we'll go in there and show them that we could, if we wanted to, you know? I mean, I think that was pretty much the general idea."

6

The officer, agent, says, "General idea?" Mr. Black says, "Like, what -- you know, we could if we wanted to. We ain't, you know?"

He also made statements in his Man On The Street interview at the Capitol, Government Exhibit 612: They stole our country -- all crooked and dirty. They're not protecting our freedom. God gave it to us, not the government. Government's Exhibit 613: Why are you here? To defend the Constitution. "Well-regulated militia" is a good idea right now. The politicians are trying to divide us. Can't put up with this.

I do agree that there is a significant spiritual component to his decision making process. I credit his statements that he prayed and consulted God for guidance about whether and how to act on his political concerns that he clearly had, and that he indeed "felt" -- and that's his word, not mine -- that God was giving him direction.

But even as the defendant tells the story, he's not claiming that he was just going about his business, and the Lord spoke to him directly, out of the blue, and told him to do something. It's more nuanced than that.

Rather, as he explained -- about as clearly as you can to someone who may not share your particular faith – that once he was contemplating taking a particular action, he would think deeply about each of the two competing options: Should I do this? Or not do this? And based on whether he's thinking about one or the other brought him a sense of peace, he gained an understanding about what he felt God was telling him to do.

He says this in his January 8th FBI interview at Government's Exhibit 100.AA and 100.CC. And I want to emphasize that in my view, the record establishes that he is entirely sincere about this, and I accepting it as a true and accurate statement of his state of mind.

But for purposes of this element, and the decision I have to make, I don't have to resolve the complex psychological -- or maybe it's philosophical or maybe it's theological -- question of whether that means he was first and foremost motivated by what he understood God wanted him to do or motivated by his clearly articulated desire to upend the government, or at least to demonstrate to those in power that the mob was capable of overthrowing them.

These are not mutually exclusive. And the motivation to overthrow the government is not an element of any charge in this case. He is not charged with sedition, there was no need for the government to establish that he was a revolutionary.

7

**The question before me is what did he intend to do? Not why.** And the second element of Count 1 is whether he intended to obstruct or impede a specific official proceeding; the certification of the Electoral college results. That's what he's charged with. It doesn't matter to this element if he intended to do that with an understanding that he had the Lord's imprimatur or agreement or discretion, or if he intended to do it without taking that into consideration. It also didn't matter if he intended to do that and also intended to plead the blood of Jesus on the Senate floor.

And I want to digress here for a minute about that because the evidence is replete with the defendant's statements about pleading the blood of Jesus or wanting to plead the blood of Jesus. There is no evidence in the record, though, about what this means as a matter of theology. And that could vary anyway depending on one's particular form of Christianity, congregation you belong to, what you've been taught. And I would not presume to enter that discussion.

But more importantly, there is little or no evidence in the record about what it meant to the defendant. We get only one glimpse, and that's the time when he says, in Government's Exhibit 100.DD, during the FBI interview, "I wanted to plead the blood of Jesus on that place because there's all kinds of evil coming out of that thing." So that's consistent with the expelling evil spirits theory advanced by counsel in its opening. But that may not be all there is to it.

I also note that even if you credit the defendant's own statements, the evidence is consistent with the government's theory that this may have been a later, or at best, an additional motivation.

In the YouTube video, Government's Exhibit 1.GGG, after he gets through the rotunda doors, he explains, "And then I thought -- I just -- I thought, well, I was inside the building. I'm gonna walk around and plead the blood on this thing.

And in the January 8th interview he says, at 100.DD, I just felt like the lord wanted me to go in there and plead the blood of Jesus inside the building, you know. I just wanted to show the politicians that we, the people, run this country.

And that's when he explains, as I just read, that he wanted to show them that we, the people, can do it if we decide. We had the power and the numbers at the moment to show them that you don't run the country, we do.

8

And then he goes, "and I wanted to plead the blood of Jesus on that place because there's all kinds of evil coming out of that thing."

The government argued in closing, Well, if you wanted to do that, he did that outside of the Senate, in the lobby. He didn't need to go in the chambers and he didn't even do it when he was inside. I'm not sure we can say that. It's not at all clear to me that for this man, the pleading the blood of Jesus is a distinct, visible, drop-to-your-knees moment in time, a specific prayer. It could very well be an ongoing internal conversation or thought process or a state of mind or intention or spirituality that moved him throughout the entire day.

But as I said, whether he had that intention and how he did or did not act upon it is not the point for this count.  **The whole discussion about the two motivations was largely beside the point because for this count we have to wrestle with a different question: His intent to obstruct the official proceeding alleged in the indictment.**

The law does not require proof that the official proceeding was actually pending, or underway, or that it was about to be instituted at the time of the defendant's actions. But if the official proceeding was not pending at the time of the defendant's conduct, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant at that time.

**In addition, the law requires that there be a connection or relationship in time, causation, or logic between the obstructive act and the proceeding; that is, the government must show that the defendant had knowledge that his actions were likely to affect the proceeding**.

The parties submitted jury instructions in this case and in footnote 2 to the proposed jury instruction for Count 1, the government provided the case law that supports what it referred to as the nexus requirement. And it cited *United States versus Aguilar*, 515 U.S. 593, at 599 to 600. The Aguilar case defined the nexus requirement in connection with the offense of obstructing a judicial proceeding to be, quote, that the act must have a relationship in time, causation, or logic with the judicial proceeding. The Supreme Court reiterated the requirement that there be a "nexus between the obstructive act and the proceeding" for purposes of § 1512 in the *United States versus Arthur Anderson,* 544 U.S. 696, at 607. And it mentioned and it made it clear that the defendant has to have a particular official proceeding in mind. **And here the official proceeding has to be the one alleged in the indictment, the congressional certification of the Electoral college results. Not simply some business of the government, some business of the**

9

**Congress or the results of the election in general.** But the government is not required to show that the defendant's sole intent was to impede the proceeding. And that's why he could have been there for his religious reasons as well.

**After reviewing all of the evidence, more than once, I conclude that while it is through no fault of the investigators or the prosecutors, that appears to be absent from the government's proof in this case.**

**The government relies heavily on context: He went to a Stop the Steal rally, people were yelling, "stop the steal" at the Capitol. They tell me I can extrapolate from the words "stop the steal" -- particularly given the context that the attack on the Capitol came right on the heels of President Trump's speech -- that they were talking about the certification that Trump had been decrying before and decried in his speech.**

**One problem we have with that is that the speech is not in evidence. Also, we don't know how much of it the defendant heard or internalized. We do know that he left with the first wave of protestors and was walking towards the Capitol well before it was over.**

**I do agree that you may be able to draw those inferences with respect to a lot of the protestors. But we do not have one single text or Tweet or statement by this defendant -- before, on, or after January 6 -- where he articulates his grievance in terms of anything that Congress was supposed to do in terms of any proceeding that was going on that day. We don't even have one single statement where Mr. Black uses the phrase "Stop the steal." He said, during his January 14th interview, that when he got to the rally, people said that they were going to the Capitol and he decided to go. Government Exhibit 101.11, he was told, "We're doing a protest at the Capitol." And that is a specific as it ever got.**

**The evidence did include information that President Trump told the crowd to go up Pennsylvania Avenue to the Capitol, but the evidence didn't include what he was complaining about in particular, or what they were supposed to go when they got there. Defendant unquestionably went and unquestionably went under his own power with the clear intent to get there and get inside.**

**The government points to the Vice President's announcement and the fact that the defendant said at the very start of his video telling his side of the story, Government's Exhibit 1.A.1, "Once we found out**

that Pence turned on us and that they had stolen the election, like officially, the crowd went crazy." But the defendant had already breached the barricade at the Peace Circle by that point and he was at the gate in front of the Lower West Terrace before Pence issues his statement, after 1 p.m.

The defendant was the first to breach that barrier at 12:57 and 55 seconds, according to Government's Exhibit 402A. And that fleeting mention of Pence is the main piece of evidence that, according to the government, anchors the defendant's presence at the Capitol to the certification.

But if the focus is the defendant's intent and not the intent of the mob, another thing you can't help notice -- can't help but notice is that he keeps using the past tense, "they had stolen the election." We had a lying, crooked president. Every other statement is like that as well, and I can't help think but about something Mr. Fleckinger said in his opening statement, which is that the defendant seemed to have thought it was already over.

The government persuasively argued that once the defendant entered the Senate, the document that caught his attention was about Cruz's objection. That the defendant went to the effort to photograph it and save that photograph, even if he may have deleted others. So maybe he wasn't clueless about the import of the day and the nature of the proceeding. But the scene surrounding the document shows the defendant walked up when others had already found it and they're discussing it -- and indeed, the first person to look at it and interpret it mistakenly saw it as a sign that Senator Cruz had forsaken the, too [sic]. The defendant does not weighed in on the discussion and what he's thinking, as usual, is largely inscrutable.

One could, in good faith, make the argument the government made. One could urge that one could draw the inferences, make the assumptions and connections it asks me to make. And that could possibly be sufficient for Rule 29 purposes, where the Court is required to resolve all inferences in favor of the government. But as a factfinder, I cannot say, in good conscience, that the government has proved this element beyond a reasonable doubt. I'm on the fence and I am troubled by it and that's not good enough.

The third element of this count is that the defendant acte knowingly, with awareness that the natural and probable effective of his conduct would be to obstruct or impede the official proceeding. I

11

**think it's clear that he knew he was obstructing or attempting to obstruct something governmental, but what is quite vague and so that falls with the previous element, given the absence of the specificity**.

The fourth element is that the defendant acted corruptly. This is where I think the defendant's religiosity has greater bearing than on the second element. The defendant's political and religious views are deeply intertwined, and they're certainly a spiritual aspect to all of it.

I will say first, for purposes of the Rule 29 motion, that I don't find that the defense motion has to be granted on the basis that the government's case included evidence that the defendant believed that his actions were at least approved of, if not directed by God.

According to *United States versus Davis*, 562 F.2d 681, at 683 from the D.C. Circuit, it's only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the judge may properly take the case from the jury. Put another way, as the Circuit said in *United States versus Weisz*, 718 F.2d, at 437, the district court may grant a motion for judgment of acquittal only when a reasonable juror must necessarily have had a reasonable doubt as to the defendant's guilt. And in evaluating a motion for judgment of acquittal, the Court should consider the evidence in the light most favorable to the government. That's *United States versus Wahl*, 290 F.3d 370.

So from the perspective of Rule 29, a juror could have considered all of the evidence and found that notwithstanding the mixed motives, the defendant was acting with an unlawful purpose.

It is a much closer question, though, as to whether one could conclude beyond a reasonable doubt that this particular defendant, given the unique stew in his mind that considerable misunderstanding about the Constitution, considerable misinformation about the outcome of the election, some pretty ugly assumptions about some of the political figures involved, and a deep faith that infused all of his political beliefs that all of that is percolating together and is being further agitated and heated up by rhetoric available on social media. It is a close question whether one could conclude then, beyond a reasonable doubt, that Mr. Black had, quote, an understanding or awareness that what he was doing was wrong or unlawful, unquote. It's not the objective test of whether he had it or should have had it, it's a subjective test of what's inside his head.

Given the number of times he repeatedly passed through or over obvious barricades, he repeatedly pushed his way past uniformed officers, he repeatedly ignored their official entreaties to desist or depart, all notwithstanding the very obviously illegal mayhem around him and the very obvious way the U.S Capitol Police had tried to stop him in particular, a reasonable juror could conclude that this element was established. But I need not decide this very close issue myself, given my determination with respect to the second element that requires a not guilty verdict on this count.

**The government also moved, though, on an aiding and abetting theory. So I need to consider that as well. The first element of that is that others committed obstruction of an official proceeding by committing each of the elements in the offense charged. That was conceded.**

**But even if the government also proved the second element, that the defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others, that the defendant performed an act or acts in furtherance of the offense, and that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of an obstruction of an official proceeding, some of that I think is iffy.** You don't have the same intent problem with the fifth element that you have in charging him with a principal portion of this count, which is that the defendant did those act or acts with the intent that others commit the offense of obstruction of an official proceeding.

**And, therefore, I find the defendant not guilty even on an aiding and abetting theory of Count 1.**

*United States v. Black*, Case No. 21-cr-127, Transcript of the January 13, 2023

Verdict Proceeding, at 17-36, attached hereto as Exhibit 2.

## CONCLUSION

Michael Pope must be acquitted of the charges under Sections 1512(a)(2) and 231(a)(3). If the remaining transcripts of acquittal verdicts come in before this Court rules on the charge under Section 231(a)(3), Michael Pope will respectfully update the Court with a further supplemental notice of authority.

Dated this 31st day of July, 2024.

Respectfully submitted,

/s/ Bruce H. Searby

Bruce H. Searby, DC Bar No. 1012382
SEARBY PLLC
2000 P Street, NW, Suite 705
Washington, D.C. 20036
Tel: (202) 750-6106
Fax: 202-849-2122
bsearby@searby.law

COUNSEL FOR DEFENDANT
MICHAEL POPE

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of July, 2024, true and genuine copies of FIFTH NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANT MICHAEL POPE'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER RULE 29 were served via electronic mail by this Court's CM/ECF system, which will serve a copy on all counsel of record.

Respectfully submitted,

/s/ Bruce H. Searby
Bruce H. Searby, DC Bar No. 1012382
SEARBY PLLC
2000 P Street, NW, Suite 705
Washington, D.C. 20036
Fax:  202-849-2122
bsearby@searby.law